UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-50476
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HOWARD JAMES BELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
Civil Docket #W-97-CV-321
_____

December 20, 2000

Before DAVIS, JONES, and DeMOSS, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

The only issue on appeal is whether the district court properly rejected Bell's § 2255 petition raising a claim of counsel's ineffectiveness at sentencing. Finding no error, we affirm.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In 1996, Howard James Bell (federal inmate # 57238-097) pleaded guilty to conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

At sentencing, Bell's attorney did not object to the four-level enhancement for Bell's role in the offense. He objected successfully to other enhancements, however, and as a result, the court sentenced Bell to 210 months' imprisonment, followed by five years' supervised release, and imposed a fine of $5000. Bell's direct appeal was dismissed as untimely.

After a series of procedural maneuvers, Bell was given leave to pursue a § 2255 motion in district court in which he alleged his trial counsel was constitutionally ineffective for failing to object to a four-level sentence enhancement for Bell's role as an organizer or leader in the offense. U.S.S.G. § 3B1.1.

Disagreeing with his position, the Government submitted the affidavit of Bell's trial attorney, Brian Pollard. Pollard recalled that Bell was reluctant to talk about any drug dealing he may have had or about what he had told law enforcement personnel during debriefing prior to counsel's appointment. Pollard stated that he calculated Bell's potential sentence under the guidelines and assumed,

2

inter alia, that Bell would be found to be an organizer or leader. He sent copies of his calculations to Bell and Bell's California attorney, William Logan. Pollard asserted that he had several conversations with Bell prior to the guilty plea. When he received the PSR, he immediately sent copies to Bell and Logan and asked Bell to advise counsel if he had any objections. Pollard's notes showed that he subsequently talked with Bell and presumably that they had discussed any objections. After visiting Bell, counsel raised three objections to the PSR, not including an objection to the organizer/leader enhancement. Pollard did not recall Bell saying that he wanted to object to that enhancement.

The district court held that Bell was not denied effective assistance of counsel and denied his § 2255 motion. The court found that the PSR supported the organizer/leader enhancement, that counsel could not have been ineffective for failing to present meritless objections, and that Bell could not have been prejudiced by counsel's failure to object to the enhancement because Bell had presented nothing that would indicate that such objection would have been granted. This court granted Bell a COA to appeal.

## DISCUSSION

Bell argues that he was denied effective assistance of counsel, who failed to object to the four-level adjustment

3

to his base offense level for his role as an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.

Bell's PSR recommended a four-level upward adjustment under U.S.S.G. § 3B1.1(a) for being a leader or organizer of criminal activity that involved five or more participants or was otherwise extensive. The probation officer outlined three factors upon which he based his conclusion that Bell played a organizational or leadership role: (1) Bell was the source for all the methamphetamine distributed by Hooper and the other co-conspirators, showing Bell's participation to a greater degree in the commission of the offense; (2) "Bell controlled the price to be paid by Hooper/Murphy for the methamphetamine that was purchased thereby claiming a right to a larger share of the fruits of the crime"; and (3) Bell packaged the methamphetamine and shipped it via Federal Express "thereby participating to a greater degree" in the commission of the offense. Counsel did not object to this adjustment.

To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced his defense. Strickland v. Washington,

4

466 U.S. 668, 689-94 (1984). A failure to establish either deficient performance or prejudice defeats the claim. Id. at 697. To show that his attorney's performance at sentencing was prejudicial under Strickland, Bell must demonstrate that there is a reasonable probability that but for counsel's ineffective assistance, the sentence would have been *significantly* less harsh. Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993) (emphasis added).

If counsel had successfully defeated any adjustment for Bell's role in the offense, Bell's total offense level would have been 31 which combined with his category II criminal history, would have resulted in a guideline range of 121 to 151 months, rather than a range of 188 to 235 months. See R. 1, 132. If counsel was deficient in not objecting to the four-level enhancement, this resulted in a specific, demonstrable enhancement to Bell's sentence and, thus, was prejudicial. See United States v. Phillips, 210 F.3d 345, 351 (5th Cir. 2000). Accordingly, this court must determine whether counsel's failure to raise a challenge to the leadership-role enhancement constituted deficient performance.

A defendant's base offense level may be increased four levels if he was an organizer or leader of a criminal activity involving five or more participants. U.S.S.G. § 3B1.1(a). A § 3B1.1 adjustment is proper only if the

5

defendant was an organizer, leader, manager, or supervisor "of at least one other person who was criminally culpable in, though not necessarily convicted for, the endeavor."[1] United States v. Gross, 26 F.3d 552, 555 (5th Cir. 1994); see § 3B1.1, comment. (n.2). To distinguish whether the defendant played an organizational/leadership role or played a management/supervisory role, the court should consider the following factors: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. § 3B1.1, comment. (n.4).

Bell, who lived in California, admitted that he supplied Hopper, a Texas truck driver, with approximately seven to 15 pounds of methamphetamine on and off within a year's time. The methamphetamine was destined for Harold Joe Murphy's distribution network in Waco, Texas. In the

---

[1] If the defendant did not organize, lead, manage, or supervise another participant, an upward departure, but not the base offense level increase, may be warranted if the defendant nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization. § 3B1.1, comment. (n.2); see United States v. Jobe, 101 F.3d 1046, 1068 (5th Cir. 1996).

6

beginning, Bell supplied Hopper with small quantities and when Hopper figured out that Bell could get more, Bell obtained a pound of methamphetamine for Hopper. At first, Hopper traveled to California to pick up the drugs from Bell, sometimes accompanied by Murphy. Hopper later figured out that they could use Federal Express to transport the drugs. Hopper would telephone Bell to set up the drug purchase and the transfer of money; Hopper would then send a cashier's check in payment to Bell or his associate/partner, Hasan. Bell would buy one pound of methamphetamine for from $4,000 to $9,000, and would sell it for $9,000 to $11,000 per pound. At one time, Bell had several sources of his supply, including Raymond Hajjaj. Bell was described as working for Hajjaj and as Hajjaj's right-hand man.

Bell asserts that these facts presented in the PSR did not support the finding that he was a leader or organizer. He asserts that there was "no discussion" that the criminal activity involved five or more participants. Bell also asserts that there is no evidence that he exercised decision-making authority, recruited accomplices, claimed a right to a larger share of the fruits of the crime, had a higher degree of participation in planning or organizing the offense, or had any control or authority over others.

The Government argues that an objection to the § 3B1.1(a) enhancement would not have been successful. The Government argues that Bell (1) controlled the supply of all of the methamphetamine distributed by Hopper and the co-conspirators in the Waco area and thus played a central role and participated to a greater degree in the commission of the offense; (2) controlled the price of the methamphetamine paid by Hopper and Murphy, controlled the method of payment by requiring cashiers' checks, some made payable to intermediaries, and fronted drugs to Murphy and, thus, manifesting control and decision-making authority in the offense; (3) attempted to collect debts and thus to maintain discipline as evidenced by Murphy's assertion he began receiving threats after Hopper demanded payment of his own fee and said that Bell wanted his payment for the fronted drugs; (4) used deputies and unwitting participants to cash checks for him; (5) profited from his sale of the drugs and, thus, it could be inferred that he received the largest share of the fruits of the conspiracy; and (6) controlled the packaging at his residence and shipment of the drugs via Federal Express and, thus, played a leadership role. The Government asserts that this evidence showed Bell's exercise of control and authority which supported the leadership adjustment.

It is clear from the PSR that the conspiracy involved far more than five participants. The case involved the four indicted codefendants three other named participants, and others.

Moreover, from the foregoing facts, the district court found Bell's contention that he was <u>not</u> an organizer or leader under § 3B1.1 unfounded, while the PSR's contrary conclusion was "fully supported by the record." We are mindful that a fact finding that a defendant is an organizer-leader would be reviewed on direct appeal for clear error. <u>United States v. Lage</u>, 183 F.3d 374, 383-84 (5th Cir. 1999), <u>cert. denied</u>, 120 S.Ct. 1179 (2000). Thus, Bell bears a heavy burden in demonstrating that counsel would necessarily have prevailed in objecting to this enhancement in the district court or on appeal.

After careful reviewing the PSR and relevant portions of the record, we are unpersuaded by Bell's arguments. Bell's pivotal role as a supplier to the conspiracy also placed him in the position of packaging and arranging delivery of the drugs, controlling the price, taking a large share of the profit, enforcing payment from Murphy, fronting drug deliveries on credit, and using dupes to receive some of the disguised payments. Individually, none of these actions might qualify for a sentencing enhancement. But put

9

together, they would surely have shielded the district court's finding that Bell was an organizer/leader from reversal for clear error. Bell's trial counsel was thus not constitutionally deficient, and the trial court correctly denied § 2255 relief.

AFFIRMED.